# In re License of Kilrow.

*Liquor law—Retail license—Newspaper notice—Act of May 13, 1887, P. L. 108.*

1. Application for retail liquor license must be published three times in two newspapers in accordance with the provisions of the Act of May 13, 1887, P. L. 108.

2. The Act of July 30, 1897, P. L. 464, does not authorize the issuing of a license to a retail dealer and the procedure therein provided does not refer to the granting of retail licenses.

Argued March 5, 1918. Appeal, No. 45, March T., 1918, by Ira A. Williams et al., Remonstrants, from order of Q. S. Susquehanna Co., Jan. T., 1918, No. 13, granting a retail liquor license in the matter of Michael Kilrow's application. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Application for retail liquor license. Before DENNY, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was the order granting the license.

*Edson W. Safford,* for appellants, cited: Schwen's License, 66 S. C. 280; Sun and Banner Pub. Co. v. Bennett, 26 S. C. 243-247; Luzerne County v. Kirkendall, 209 Pa. 116; Schuylkill County v. Shoener, 205 Pa. St. 592; Greenfield Ave. Pittsburgh's App., 191 Pa. 290; Searight's Est., Stuart's App., 163 Pa. 210-217.

*Thomas A. Doherty,* for appellee.

OPINION BY PORTER, J., February 28, 1919:

The application for this retail liquor license was published three times in two newspapers in accordance with the provisions of the Act of May 13, 1887, P. L. 108.

The appellants contend that the third section of the Act of July 30, 1897, P. L. 464, required that notice of this application be published two times in three newspapers, and that not having been so advertised the court was without jurisdiction to grant the license. The legislature of 1887 laid the foundation for the present system of regulating and restraining the liquor traffic in Pennsylvania. It saw fit to provide one system for the regulation of the sale of liquors at retail, in the Act of May 13, 1887, P. L. 108, and a distinct system for all other classes of dealers by the Act of May 24, 1887, P. L. 194. The statute last mentioned was entitled "An act providing for the licensing of wholesale dealers in intoxicating liquors," but the body of the statute specifically mentions eight different classes, viz: "wholesale dealers, brewers, distillers, rectifiers, compounders, store-keepers, agents, and bottlers," and contains special provisions referring to each class. This statute vested the jurisdiction to grant licenses for these several classes of dealers in the Court of Quarter Sessions, but it made no express provision for the procedure to obtain a license, merely saying that it should be, "in such manner as is provided by existing laws." The courts construed this to warrant the same procedure that was provided in the statute authorizing the granting of licenses to sell liquors at retail. It was, however, held under this statute that the courts were without authority to refuse a wholesale license upon the ground that there was no necessity therefor, a power which was explicitly conferred by the legislature authorizing the granting of retail licenses. This legislation was followed by the Act of June 9, 1891, P. L. 257, entitled "An act to restrain and regulate the sale of vinous, spirituous, malt or brewed liquors or any admixture thereof by wholesale." This statute again divides the dealers other than retailers into the same eight distinct classes above mentioned, continues the jurisdiction to grant licenses in the Court of Quarter Sessions, makes detailed provisions for the procedure and

vests in the court jurisdiction to determine the necessity for the license. This was the condition of affairs prior to the adoption of the Act of July 30, 1897, P. L. 464; retail dealers were subject to one system of regulation and the other eight classes of dealers, who might be said to come under the general designation of wholesale dealers, were subject to another system of regulation. The Act of 1897 was entitled "An act to provide revenue and regulate the sale of malt, brewed, vinous and spirituous liquors or any admixture thereof, by requiring and authorizing licenses to be taken out by brewers, distillers, wholesalers, bottlers, rectifiers, compounders, storekeepers and agents......and by imposing an additional license fee on retail dealers in intoxicating liquors." Here we have express notice in the title of the act that it is proposed to deal generally with the subject of licensing the eight same classes of wholesale dealers referred to in the Acts of 1887 and 1891 and the notice is certainly sufficient to cover any change in the procedure to obtain a license, but this title indicates a limitation of what it was proposed to do with regard to retail dealers, as to them the change was to involve the imposition of an additional license fee, and there is nothing which would seem to indicate that it was proposed by the statute to change the jurisdiction to grant a license or the manner of its exercise. We are not, however, disposed to rest our decision upon the insufficiency of the title of the act. The body of the statute contains distinct evidence that it was not the legislative intention to in any manner change the procedure for the granting of retail licenses. The second section of the act ordains that each person licensed to sell liquors at retail shall pay to the treasurer of the county for the use of the Commonwealth, "an annual license tax," in an amount dependent upon whether his place of business was located in a township, borough or city, and directs the manner in which the county treasurer shall pay over the amount so re-

ceived to the State treasurer. The legislature, in order to avoid any implication of an intention to change the procedure in the granting of licenses to sell liquor at retail, then wrote into the statute the following: "Nothing in this section contained shall be construed to change, modify or alter the existing law in reference to the granting of retail licenses, or the fees paid to the local authorities for the same. It is the intention of this section to impose an additional license tax for the sole use and benefit of the Commonwealth."

The provisions of the third section of the statute, so far as they are asserted to be controlling by these appellants, are as follows: "Every person intending to apply for a license as aforesaid under the provisions of this or any other act of assembly in any city or county of this Commonwealth, on or after the passage of this act, shall file with the clerk of the Court of Quarter Sessions of the proper county, his or their petition, at least three weeks before the session of the court at which the same is to be heard......and said clerk shall cause to be published two times in three newspapers designated by him, ......a list containing the names of all such applicants, their respective residences, and the place for which application is made." The words are not "every person intending to apply for a license to sell liquors," they are "every person intending to apply for a license as aforesaid." The licenses here referred to are those required by the preceding sections of the act, which a party must obtain before engaging in the business of any one of the eight classes of wholesale dealers. This statute did not authorize the issuing of a license to a retail dealer, that was not one of the licenses "aforesaid" with which it dealt. The learned judge of the court below properly held that the procedure for the granting of retail liquor licenses must be in accordance with the provisions of the Act of 1887.

The order is affirmed and the appeal dismissed at cost of the appellants.